Case is Brandon Timmons v. Bohinski and Ms. Montgomery, whenever you're ready. Good morning, Your Honors. May it please the Court. Sophie Montgomery for the appellant, Mr. Brandon Timmons. I'd like to reserve three minutes for rebuttal. Granted. Thank you. Mr. Timmons provided a declaration at summary judgment stating that when he attempted to file a grievance against the appellee and defendant, Mr. Bohinski, officers told him that, quote, inmates who file grievances against Bohinski get the shit beat out of them. The district court rejected this declaration as, quote, conclusory and self-serving. But under Rule 56 and this court's precedents, that is plainly not an accurate statement or an appropriate basis for summary judgment. Now on appeal, Mr. Bohinski asks this court to impose a corroboration requirement and a requirement that litigants in Mr. Timmons' position name the prison employees that rendered grievances unavailable to them via threats. But neither requirement has any basis in the law. For those reasons, this court should vacate and remand for further proceedings. So to start, this declaration was competent evidence for summary judgment purposes and district court plainly should not have rejected it as conclusory and self-serving. As the non-moving party at summary judgment, what Mr. Timmons needed to do was point to competent evidence such that a reasonable jury could return a verdict for him. And that's what he did. It seems like the gap, if there was one, in the declaration is the identities of the speakers. Can you speak a little bit to that and whether or not it's relevant under our law? It is not relevant under the law. So the relevant substantive legal test for whether grievances were in fact rendered unavailable by intimidation or threats is this court's Rinaldi case, which says that first, the prisoner must have been actually subjectively deterred, and second, a reasonable person of ordinary firmness and fortitude would have been so deterred. There's no reason that a reasonable prisoner of ordinary firmness and fortitude would not be deterred from filing a grievance against an official whose name they do not know. I think there are lots of reasons that don't merit any kind of skepticism by a court that an individual in Mr. Timmons's position wouldn't know the name of the official threatening them. And I could understand the district court sort of looking past the identity gap on the subjective prong of that test, but also being interested in when evaluating whether there's a dispute of fact on the objective side, if there's not enough evidence to allow either party to really go depose this person who allegedly says these things, and we are at a point in the case where it's your client's burden on an affirmative defense. Isn't there some latitude under Rule 56 to say that that gap means there's not a genuine dispute on the objective prong of Rinaldi? So I think I'd like to start in responding to your question by addressing the way the burden shifting works here. So, you know, we're at summary judgment. Obviously, only Mr. Bohinsky moved for summary judgment. Mr. Timmons does have the burden of persuasion on the availability question. But the way that the summary judgment standard interacts with the burden shifting is that once Mr. Timmons pointed to competent evidence that, you know, could establish the availability issue, to win summary judgment, Mr. Bohinsky needed to do something to negate that, and he didn't. So, right, Mr. Timmons didn't come, Mr. Bohinsky didn't come back with anything to negate Mr. Timmons's showing. And so because of the way, because of the fact that Mr. Timmons was a non-movement, that just means that Mr. Bohinsky can't prevail at summary judgment. And that's, that is, you know, just how summary judgment works. So let's, let's reorient a little bit around the standard. Because, you know, Rinaldi talks about fact finding on the exhaustion issue, which I think is distinct from a summary judgment posture, puts the district court in a position to resolve fact disputes. Can we read this decision as Rinaldi fact finding, rejecting the declaration? No. Under this court's Small and Palladino cases, if the district court wanted to engage in that kind of fact finding, it was required to give notice that it was going to do so, and to give the parties an opportunity to adduce additional evidence. In Palladino, this court reversed for failure to do that, to provide that kind of opportunity. The district court did not purport to be proceeding under Small and Palladino. Mr. Bohinsky has not argued that that's what happened here. Was Palladino with us on a summary judgment decision or a 12B6 decision? It was a summary judgment decision. I'd also note that if this court were to vacate and remand for further proceedings, as we've asked, you know, Part 2 sort of changes the landscape a little bit in terms of what the next steps may be. But assuming that the district court, you know, wanted on remand to try to engage in fact finding, you know, there may be some briefing about Part 2 issues. But that might be an available course of action, but that is not what the district court purported to do here. I'd also just like to make a second point in response to your earlier question about the sort of absence of sufficient material in the declaration for Mr. Bohinsky to kind of give any meaningful rebuttal. I would push back on that. The declaration here gave specific facts, right, which is why it's not conclusory. It said what exactly was said, the dates on which it was said, some details about people who said it, including that the second person wasn't wearing a name tag, where it was said, right, deblock. I'm not defense counsel. I'm sure that they could come up with more creative different ways of doing it. But just for example, Mr. Bohinsky and the prison's counsel could have taken the schedules for the 16th and the 27th, looked at who was working, you know, the pay records, cross-referenced them against prison logs, looked at the 12 people that could have been in those locations at that time, and either gotten declarations from those 12 or 6 people or deposed Mr. Timmons, showed pictures, right? I think that... Was it their burden? If we assume that we're going to stay on the summary judgment pathway, was it the defendant's burden to do that, though? I think that's... It was not the defendant's burden to do that to... Like, the defense could not have... Mr. Timmons could not have won summary judgment, right, because he didn't move for summary judgment. But if Mr. Bohinsky wanted to win at summary judgment, then yes, as I said, because Mr. Timmons pointed to competent evidence establishing a genuine dispute of material fact, Mr. Bohinsky needed to negate that in some way, and he didn't. I'm not saying that that's the only way he could have done it, but... Even then, how could Bohinsky have won summary judgment? Let's say they got the declarations from the 16 people or whatever, or took Timmons' deposition, and he says, whatever you want him to say, doesn't Timmons just continually point to his declaration and say, hey, now it's just a swearing match, so I still get past summary judgment? Because it's still a disputed material fact. Very likely that's the case. I think... And that's how summary judgment works. If there's a two competing narratives, then that's not for the judge to determine at summary judgment. I do think the standard is a genuine dispute of material fact. So in a hypothetical case, there could be certain types of evidence. I think of the Scott versus Harris case about the video case, not suggesting that that's the only way, but there could be cases in which there is not a genuine dispute of material fact, because a reasonable jury, reasonable fact finder could not find for the non-moving party at trial. I guess the other option here, too, is small, right? Assuming Part 2 doesn't change the analysis here, is going the small path. Exactly. That's right. And that would be, again, subject to potential Part 2 issues, which the district court did not have the benefit of the first time around, because Part 2 was decided a couple of months after the summary judgment decision. That would be an available course for the district court to... Let me ask you a question about deterrence. We talked about the objective side of things. Let's talk about the subjective side of things. Your friends on the other side say there is no way there was deterrence here. Mr. Timmons was familiar with the grievance process, filed grievances before and after this. So how was there deterrence here? Can you respond to that statement from them? Absolutely. So I'd like to make, I think, two points in response. So first is, again, I think Rinaldi is directly on point. Rinaldi makes clear that the fact that the plaintiff has successfully filed unrelated grievances isn't dispositive on whether the grievance pathway was available for this particular grievance. And here, the threats at issue were very narrowly about Bohinsky, right? Inmates who file grievances against Bohinsky get the shit beat out of them. If you file another grievance against Bohinsky, you're going to get jumped. So looking at kind of the Rinaldi language around the subjective standard, I think it makes perfect sense that from those very specific threats of targeted personal violence made by people with control over the grievance system and with some authority over folks in the prison, that that would have, as Mr. Timmons said it did, made him too scared to file grievances. And to that point, the, I think this is sort of my second point, Mr. Timmons did file 22 grievances in the second half of 2021, right? But many of them are about things like medicine, telephone access. And it is true that six of them were about problems with staff, but we don't have those in the record, right? We don't know that they're about Bohinsky. The fact that Mr. Bohinsky doesn't say they were, I think, creates at least a genuine dispute of material fact that these were not sufficiently related to the Bohinsky threats, that they would be relevant in the way that Rinaldi contemplates. Then actually a third point that I'm just thinking of as I'm standing here, I think if anything, a reasonable inference could be that because Mr. Timmons is obviously savvy, capable of navigating that system and understands the importance of doing so as evidenced by the fact that he has exhausted or filed grievances in 22 other cases in the second half of 2021, that shows, or the reasonable inference is that there was some kind of external, you know, why didn't he do that in this case? Perhaps because as he said, he was intimidated and frightened and deterred from doing so by these threats by prison officials. Do you have a view about whether the exhaustion facts are intertwined with the allegations, you know, comparing it to part two and how we should think about that? Yeah, it hasn't been briefed. So if the court were interested in going down that pathway, I think we'd like the opportunity to brief it. I do think there is an argument as in part two here, there is a first amendment retaliation. There's a retaliation claim. Obviously the difference is that in part two, the prison employee who made the threats was also the defendant. In this case, the declaration says that Bohinsky was a supervisor and was acting as a supervisor. So I think it's possible that there may be, you know, an argument that Mr. Bohinsky was exercising his sort of supervisory authority to enlist these other guards on his kind of retaliation campaign. But I think this issue would really benefit from further briefing. The district court, you know, hasn't considered this on the merits. How would you think about like the, there's a timing issue in this case, like the time frame in June, 2021, between the allegations, the substantive allegations and the exhaustion issue is it's like it's within two weeks or so. How should we think about the timing link relative to the intertwinement language in part two? Yeah, I mean, two thoughts. First, actually, the first threat was on the same day. So there was the underlying incident and then kind of in the same paragraph of the declaration that same day I filed my grievance and I was told that inmates who file grievances against Bohinsky get the shit kicked out of them. So, shit beat out of them, excuse me. So in that sense, I don't think there is a potential timing issue. But then I also, I don't know that the timing would be a problem if... I was suggesting the other way, that timing could suggest intertwinement. Oh, yes. Yes. Okay. Yes. In that sense, I agree. I also think in the third paragraph of the declaration, there's Mr. Timmons says that because of the underlying incident in which Mr. Bohinsky called Mr. Timmons a rat in the snitch, Mr. Timmons was treated with hostility by other prisoners. And so I think, again, that kind of supports the idea that there could be this relationship between the things that the prison employees are saying, how other folks in the prison are reacting. That supports the underlying merits of his First Amendment and Eighth Amendment claim, both of which I think ultimately hinge on the effect of calling someone a rat in a snitch in front of other folks in the prison. So I do think that there is a potential intertwinement argument, but I think it would need to be, it would really benefit from briefing and consideration by the district court on remand. Thank you. Let's hear from Ms. Kogan and we'll get you back on rebuttal.  May it please the court, my name is Hannah Kogan and I am a Deputy Attorney General with the Office of Attorney General here representing Apelli Bohinsky. The district court correctly granted summary judgment for Bohinsky after concluding that Timmons' claims were barred due to his exhaust available administrative remedies as required by the PLRA. There's no dispute that Timmons never completed DOC's grievance process with respect to his underlying claims. Timmons purports that administrative remedies were unavailable to him because some unnamed John Doe correctional officers on two occasions thwarted or otherwise threatened him from lodging a grievance in June 2021 against Bohinsky. But as set forth in Rinaldi, it is Timmons' burden to demonstrate unavailability and his lone vague self-serving affidavit is insufficient to meet his burden. I at the outset also want to make very clear that it is not Bohinsky's position that an affidavit on its own cannot suffice at summary judgment to overcome a well-supported summary judgment motion for one. Second, identifying by name the prison staff that thwarted or otherwise prevented an inmate from throwing away his grievance or from lodging his grievance, the name that is obviously that was preferred and should be there, but it's not absolutely required. What does need to be there is enough to put the defendants or corrections defendants on notice. Help me understand why that doesn't exist. You have two incidents. He says what happened in the incident. He gives you the date of the incidents, where they occur. How is that conclusory? When you look at our case law about, you know, what conclusory affidavits are, I'm struggling to see how that's conclusory. I understand the district court used conclusory and I do think there are aspects of the declaration that are conclusory. I would prefer or suggest that it is rather a mere scintilla and just simply not enough to provide John Doe and a block and a date. We don't have a shift or time of day. We don't have a gender or sex. It needs to contain enough specific facts or be narrow enough that corrections defendants do not need to go on a fishing expedition on an inmate's behalf. Is there anything that we could look to in the record to suggest that it would really be a fishing expedition? Your friend on the other side laid out, like, kind of posited how discovery around this issue might work. It could be limited to a day. You know where the facility would know where Timmons was on that day. It seems knowable. I mean, we have cases. I think whether there are gaps in the reliability of a prison's record-keeping structure and that being potentially an issue to summary judgment. It seems knowable and not a fishing expedition. Is there something that we're missing on that? I believe a bit, Your Honor, because it is a bit of a fishing expedition. We don't even know, based on the declaration, if these John Does were John Does that were assigned to that block, right? So they could have been any kind of prison staff that had been temporarily going through that block on that day. So it's the prisoner's burden to know who is going through that day, who's on, you know, whether it's a new corrections officer, whether it's a person because there's a shortage. It's the prisoner's burden to know that and include that? It's the prisoner's burden to demonstrate unavailability under Rinaldi and with the benefit of discovery, which Timmons did have here and was well aware of the defense asserted by Bohensky, he had the opportunity through discovery to request all the things that honestly my friend on the other side has suggested, shift logs, video surveillance, any of those things could have been requested in discovery and Timmons did not do that. It was his burden under Rinaldi to demonstrate unavailability. I think Rinaldi is pretty specific about what that means and we've referenced that there's a subjective prong in an objective prong and you know there's language around both those problems but I don't think they get to the level of specificity that you're suggesting. Is there another case that builds out Rinaldi that gets us closer to the the type of burden on a pro se plaintiff that you're suggesting? Sure, so in terms of just the burden shifting, because I would agree your honor, there's the question of is there enough evidence to create a genuine dispute of material fact and that they've established that both objective and the subjective prongs. But in preparing for our argument, I think it is a bit reminiscent of McDonnell Douglas, that burden shifting of once you have the legitimate business reason from the employer, the burden shifts to the plaintiff to demonstrate that it was near pretext for an intentional discrimination claim or under pretext theory. So here it's that same idea where they need to at least show enough, more than a mere scintilla, a prisoner in this case that it was unavailable. And I think that I don't have a case necessarily, I think directly on point your honor, but I would revert back to both Williams and Niffis who both say you need more than a mere scintilla. It is true that oftentimes all we can expect from a prisoner may oftentimes be a summary judgment is a declaration, but that still is not enough if it's only... It's the prisoner's declaration in a case where the very theory of unavailability is the more discovery that I did into this issue, the more threats I would face. I'm sorry, the more discovery, can you repeat that? The more things I do to publicly show myself in this facility as a snitch or a rat, the more risks that I subject myself to. I believe your honor, that's a little bit mixing the underlying claim. Bohinsky is the one that called him a rat or snitch. And then separately you have the exhaustion question, which I think this goes a little bit to Perttu too and why they actually are done. I don't think it mixes it at all. The whole concept, the incentives that his theory creates are that people said to him, if you pursue these grievances and these theories, we will put you in positions that subject you to physical harm. And so it just seems odd to me that a court or frankly, the stewards of the facility would put prisoners in a position where we're creating law that says, no, in fact, even though this is your factual theory of the case that you were being subjected to physical safety risks by pursuing these claims, we should make you, prisoner, go depose these guys and sit there yourself in a pro se capacity and call them out publicly and risk yourself to more of exactly what's set out in this declaration. I don't think that's mixing the issue. I think that is the issue. Well, I guess your honor, so it's a bit circular to me then that if he's so scared to file a grievance, but he's not scared enough to file a federal lawsuit. No, it's not. What's consistent is he doesn't want to file a grievance and he doesn't want to depose people and send a bunch of subpoenas that will cause people to come after him again. And we credit his theories at this posture. And I think those are the incentives that they're consistent across the board. Right. But a plaintiff is not even a pro se plaintiff is not excused from prosecuting his case. And so if he's scared of deposing, again, we don't know who these John Doe's are, so I can't even give you a name, but he can request shift logs. He can request video surveillance. He can request other things. If he does have any fear, he can ask for appointment of counsel or he can ask for protective orders. If he's scared, he can request maybe a transfer from the prison because of this, because he fears for his safety. There are a lot of different aspects, both within the prison and through the process of just litigation that a plaintiff has access to. Is there anything in the record about the facility taking efforts to identify these these people to show us that it would have actually been a fishing expedition or a feudal? No, your honor. If if anything, it would have been helpful maybe if he had filed separate grievances saying John Doe threw away my grievance and we would have actually maybe had a name there. Sorry, my question is a little different. In the litigation, did Bohinski seek through discovery to identify the people referenced in? I guess the timing is different because he raised it in the summary judgment in response to the summary judgment motion. No, your honor. So the answer is no. Bohinski did not endeavor to find out who these John Doe's are because, again, there was simply not enough evidence or sufficient facts by Timmons to begin with. And these are the same facts or statements that were made at the pleading stage. And the district court said in denying our motion to dismiss that this was enough at the pleading stage, but in fact, may not be at the summary judgment stage. That was in footnote two of the district court opinion below for the denial of the motion to dismiss. So Timmons was otherwise well aware that, okay, you've had enough here to overcome a motion to dismiss, but it may not be enough at the summary judgment stage later on. And again, it's his burden under Rinaldi to demonstrate unavailability, to establish that. So it is not corrections defendants going through an entire day in an entire facility trying to determine who a John Doe correctional officer or correction staff is. That's simply, that's not enough essentially to equate to notice or otherwise do anything more than a fishing expedition. I just want to make sure I understand. Your position is not that Timmons' declaration is not competent evidence, right? It's just that it's not enough. It's not weighty. It's a scintilla. It's not weighty enough. That's correct, Your Honor. But it's a competent declaration. Correct. And the district court considered it and deemed it not enough. They said, I believe at the end of the opinion, it was insufficient to create a genuine dispute, a material fact to send this case to a fact finder. And I think I just want to get into a little bit about the next steps in this regarding Small, Palladino, and Perttu here. It is only once a plaintiff like Timmons has sufficient evidence to create a genuine dispute and material fact on availability that we then have a dispute of fact that must be resolved by a fact finder. Under Palladino and Small, that fact finder can be the district court judge. And here we did not, the district court did. Your position is that the plaintiff has to survive a summary judgment motion before the district court has the option to resolve the legal question of exhaustion? Survive the summary judgment. And by survived summary judgment, I would just define that as they're creating a genuine dispute of material fact on the availability question and that legal question. Where do you read that in, where do you read that requirement in any of those opinions? That's, I would just say that's Rinaldi and the summary judgment standard on its own. We don't, the resolution on the question of availability is, that's resolved by a fact finder only once, traditional summary judgment standard, once there's a genuine dispute of material fact to be resolved where reasonable minds can differ. That fact finder under Small or Palladino can be the district court judge. PER 2 says that when the exhaustion issue is intertwined with the underlying merits, that's when it needs to go to a jury and the district court judge cannot sit as the fact finder. And I would just, on the PER 2 point, while I understand it wasn't fully briefed on the question of whether or not they are intertwined, I would just suggest to this court, it is not intertwined in PER 2. Yes, it was a retaliation claim, but the claim in itself was that the named defendant, defendant PER 2, was the one intercepting and destroying the inmate's grievances. And so by, if a judge sitting as the fact finder was adjudicating the exhaustion issue, the judge would be implicitly also adjudicating the underlying merits of the first amendment retaliation claim. That's when you can tell it is intertwined. Here we don't have that. We have Bohinski allegedly calling Timmons a rat or a snitch. And that's the underlying merits claim here. But as to the exhaustion issue, we have separate John Doe's, or potentially the John Doe's could be the same. We don't know if it's even a different John Doe. But we have John Doe's threatening or thwarting his ability to file the initial grievance. Those are, that's separate. It can be resolved by district court judge in a smaller, under smaller Palladino without it being intertwined with the underlying rat or snitch name calling first amendment retaliation claim. I'm sure you know this language, but Palladino says that a single non-conclusory affidavit or witness's testimony when based on personal knowledge and directed at a material issue is sufficient to defeat summary judgment, even if it's self-serving. Why doesn't that describe this declaration? Because I believe in there was still sufficient. And yes, a self-serving affidavit oftentimes, I mean, many affidavits are self-serving, of course, but it still needs to contain enough specific facts or be narrow enough to meet that initial burden that a plaintiff or prisoner under the PLRA has to demonstrate unavailability. Why isn't that initial burden just non-conclusory? I'm sorry, Your Honor? Why isn't that burden just non-conclusory? The allegations have to be non-conclusory. It sounds like you're asking us to say that something is needed other than a non-conclusory affidavit. I would say it needs to be non-conclusory. It needs to not be vague. And here it's definitely vague. I'm so sorry. I see my time is up. Okay, go ahead. It needs to not be vague. And here it's undoubtedly vague when he's saying John Doe's and doesn't have... I don't think this court needs to give a bright line, Your Honor, about what exactly X, Y, Z, A, B, C, D is all needed for an affidavit to suffice. But it does need to be more than a mere scintilla. And I think district courts are well-suited and well-pointed with determining when that line is surpassed or not. Thank you. Okay. I'd like to make hopefully four points. I'll try to be concise. First, just in terms of what the district court actually did here, I read the opinion to say after saying he didn't specify what was written in the grievances, didn't show that he tried to learn the identity of the officers. Quote, the court is thus left with nothing other than Timmons's conclusory, unsupported, and self-serving affidavit, which the court finds insufficient. So I don't know that it'll... I think that's what the district court was purporting to do. Second, on the mere scintilla sort of idea, first, for the reasons that have been aired out about the specific facts contained in this declaration, and the reasons that we discussed when I was up here before, I think the declaration gives enough detail to ensure that no phishing expedition is necessary. The cases, the NIFAS case in particular that I found on the other side's sites, is really distinct from this case. In that case, there were sort of two different legal theories, and the declarations didn't contain sufficient... They didn't contain any specific facts that would have actually established the legal violation. One of the legal violations was an unauthorized disclosure of medical information, and there weren't any facts in the declaration actually saying that the medical information was disclosed to people who were not part of the medical care treatment team, right? So I just don't think that that's the universe that we're in. Third, on the idea that there's only a mere scintilla in this declaration, and that it's vague because of the John Doe identities, we discussed at length the sort of absence of legal relevance to that. And I just want to note, there is no other area of the law where because you can't name a defendant or a relevant person in a lawsuit, right? I think about civil rights law, John Doe defendants, this would be a real departure from a really common practice in federal court litigation. Next, on the burden question, I just want to emphasize again that I agree that there is a burden shifting mechanism on the ultimate merits here, but that needs to be viewed through the lens of the summary judgment standard. And then I'll end on this set of discovery related issues. First, there's nothing in the record suggesting that Mr. Bohinsky engaged in any discovery at all. He didn't have to. I mean, I think the state's position is it's your burden. We're going to sit back and see what they can come up with. I was responding to the direct question that your honor posed. And then this was an affirmative defense, that Mr. Timmons did not have to plead. Mr. Bohinsky raised it at the motion to dismiss stage. Mr. Timmons then responded with a declaration. The district court, I think, I just want to say exactly what the district court said at that point, which was a declaration alone without other facts may be enough at summary judgment. And that's not saying that it definitely is not telling Mr. Timmons he needed to do more. And even if it had been, the district court can't impose a bespoke burden that isn't just the summary judgment standard. So I don't think that that's relevant. I think that that's a red herring. Mr. Timmons had evidence about what he needed to show. He didn't have to do discovery to find more. He had evidence that this court has said on multiple occasions is about what we can expect of litigants in his position. And we ask this court vacate and remand. If we have like a Title VII case and the plaintiff's allegation is that he or she overheard someone in the workplace, you know, make a racial slur, and that's the entirety of the plaintiff's evidence. Would that be enough? I don't have the exact elements of a Title VII claim, you know, totally. So it's really a summary judgment question, not a Title VII question. Yeah, right. So what I was going to say is I think that if the merits of the claim could be resolved by just the existence of a slur, then I think that that could survive summary judgment. But I think actually what you probably need is, you know, a causal connection or you need some evidence, you know, there needs to be a hook to, you know, whatever, an adverse employment action. Here, all of the facts that would make up the actual legal violation, or not legal violation because it's not the merits, but that would make up the availability question are in the declaration. So I think that would be the difference is are there enough facts aimed toward these material elements, the material issues. Okay. Thank you. Thank you.